UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-

COREY JONES,

                          Defendant.
----------------------------------------------------------------------X

**MEMORANDUM**

**13-CR-438 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

## I. BACKGROUND

The court held a sentencing hearing for Defendant Corey Jones on Friday, April 24, 2015. At the hearing, the court made certain findings on the record with respect to the application of section 4B1.1(a) of the United States Sentencing Guidelines (the "Sentencing Guidelines" or "Guidelines"). This Memorandum memorializes the court's findings.

Defendant Corey Jones disputes the Probation Department's determination—supported by the United States (the "Government")—that he qualifies for the sentencing enhancement for career offenders pursuant to section 4B1.1(a) of the Sentencing Guidelines. Under this provision, a defendant is a career offender if: "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

Jones first contends that he is not a career offender because the instant offense of conviction, assault of a federal officer resulting in bodily injury, in violation of 18 U.S.C. § 111(a)(1) and (b), does not constitute a "crime of violence" under the second prong of section 4B1.1(a). (Mar. 23, 2015, Def. Ltr. ("Def. Ltr.") (Dkt. 46) at 3-4.) Second, Jones contends that

1

he is not a career offender because his June 16, 1999, youthful offender conviction in New York State court should not qualify as a prior felony conviction under the third prong of section 4B1.1(a). (Id. at 5.) For the following reasons, the court rejects each of Defendant's arguments. As a result, the court finds that Jones qualifies for the career offender enhancement under the Guidelines.[1]

## II. DISCUSSION

### A. Is the Offense of Conviction a "Crime of Violence"?

For the purpose of the career offender enhancement, the Guidelines define "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). A defendant violates § 111(a)(1) when he "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" a federal official "while engaged in or on account of the performance of official duties," and is subject to a term of imprisonment of not more than eight years "where such acts involve physical contact with the victim of that assault." 18 U.S.C. § 111(a)(1). Under section 111(b), the statutory maximum is increased to twenty years where the defendant "uses a deadly or dangerous weapon or inflicts bodily injury." Id. § 111(b). Neither the Supreme Court, nor the Second Circuit—nor any district court in this circuit, for that matter—has determined whether the violation of § 111 constitutes a "crime of violence"

---

[1] This Memorandum only addresses the application of the career offender provision of the Sentencing Guidelines to Jones's case. Significantly, it does not address other matters relevant to Jones's sentence, including the application of 18 U.S.C. § 3553(a).

within the meaning of section 4B1.1(a).  Consequently, this appears to be a matter of first impression in this circuit.[2]

The Government argues that the plain language of the statute, as well as this court's jury instructions at trial, indicate that violation of section 111 "has as an element" the use, attempted use, or threatened use of "physical force."  (Apr. 14, 2015, Gov't Ltr. (Dkt. 47) at 3-4.)  In particular, the Government points to this court's instruction that the jury "must find beyond a reasonable doubt that [Jones] acted forcibly.  Forcibly means by the use of force.  Physical force is obviously sufficient. . . . In order to satisfy this element, the forcible action must involve actual physical conduct with [the federal official]."  (Id. at 4 (alterations added) (quoting Apr. 22, 2014, Trial Tr. (Dkt. 45) at 214:4-215:8).)  Thus, the Government contends that because the jury necessarily found that Jones used physical force in committing this crime, the conviction satisfies the "use of physical force" requirement in section 4B1.2(a)(1) of the Guidelines.  (Id. & n.2.) This argument certainly has intuitive appeal.

Jones argues, however, that in light of Johnson v. United States, 559 U.S. 133 (2010), this court should interpret "physical force" in section 4B1.2(a)(1) to mean "<u>violent</u> physical force," which the Supreme Court held requires "more than a simple battery—whether of the mere-touching or bodily-injury variety."  Id. at 141 (emphasis added).  Jones contends that because a conviction under § 111 does not require more than a simple battery, his conviction does not necessarily mean that he was found guilty of using <u>violent</u> physical force.  (See Def. Ltr. at 4.)

---

[2] Cf., e.g., United States v. Burrell, 145 F. App'x 809, 810 (4th Cir. 2005) ("We agree with the district court that a conviction of 'forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing] with [a federal officer],' under § 111(a)(1), 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" (citing U.S.S.G. § 4B1.2(a))); United States v. Mitchell, 253 F.3d 702 (5th Cir. 2001) ("The statutory elements of a 18 U.S.C. § 111 offense are that the defendant, while armed with a dangerous weapon, 'forcibly assault[ed], resist[ed], oppos[ed], imped[ed], intimidat[ed], or interfer[ed] with' a federal officer engaged in the performance of his official duties.  This offense categorically constitutes a crime of violence for purposes of the U.S.S.G. § 4B1.1 and § 4B1.2 career-offender analysis.").

3

As a result, he insists that the instant offense of conviction cannot constitute a "crime of violence" within the meaning of section 4B1.1(a). (Id.)

In Johnson, the issue before the Supreme Court was whether the Florida felony offense of battery had as an element "the use of physical force," and therefore constituted a "violent felony" within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1) and (2)(B)(i). 559 U.S. at 135. While the ACCA did not define "physical force," the Court held that "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." Id. at 140 (emphases in original); see also id. at 142 ("[T]he term 'physical force' normally connotes force strong enough to constitute 'power'—and all the more so when it is contained in a definition of 'violent felony.'"). The Court pointed out, however, that under the Florida statute, a battery could be established in any one of three ways: by proof that a defendant "intentionally caused bodily harm," by proof that the defendant "intentionally struck the victim," or by proof that he merely "actually and intentionally touched the victim." Id. at 136-37 (alterations and internal quotation marks omitted). Since nothing in the record of the defendant's battery conviction permitted the district court to conclude that it rested upon "anything more than the least of these acts," the Court determined that the defendant's conviction constituted a "violent felony" only if "actually and intentionally touching another person" constituted the use of violent physical force. Id. at 137. Noting that at common law, "all battery, and not merely battery by the merest touching" was a misdemeanor, not a felony, the Court concluded that for the purpose of defining "violent felony" under the ACCA, Florida's battery statute did not have as an element "the use of physical force." Id. at 141-42 ("[T]here is no reason to define 'violent felony' by reference to a nonviolent misdemeanor.").

4

The Court's decision in Johnson did not end there, however. Specifically, the Court explained that in deciding whether a conviction constitutes a violent felony within the meaning of the ACCA, courts are not necessarily required to evaluate the least violent set of elements necessary to prove the crime. The Court clarified:

> When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "'modified categorical approach'" that we have approved, Nijhawan v. Holder, 557 U.S. 29 (2009), permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.

Id. at 144; see also United States v. Beardsley, 691 F.3d 252, 263-64 (2d Cir. 2012) ("[A]t least in practice, our Court, in [the] ACCA context[], has applied the modified categorical approach only to situations where the statute of prior conviction described qualifying and non-qualifying offenses in distinct subsections or elements of a list."); id. at 275 ("The Supreme Court and our own precedents make clear that the question in such cases is what kind of statute the defendant violated, not what conduct he likely engaged in. The most faithful way to answer that question is to use the categorical approach unless the statute of prior conviction is divisible into separately listed offenses." (emphasis in original) (citing Johnson, 559 U.S. at 144)).

Thus, for example, in United States v. Reyes, 691 F.3d 453 (2d Cir. 2012), the Second Circuit utilized the modified categorical approach described in Johnson to determine whether a defendant's prior conviction under Florida state law for battery on a law enforcement officer

constituted a crime of violence within the meaning of section 4B1.1(a). Id. at 457.[3] The court instructed that:

> To ascertain whether Reyes's conviction for battery on a law enforcement officer constitutes a conviction for a "crime of violence," we employ a two-step "modified categorical approach." See [United States v.] Walker, 595 F.3d [441,] 443 [(2d Cir. 2010)]; United States v. Savage, 542 F.3d 959, 964 (2d Cir. 2008). The first step requires the court to determine "whether the statute of the prior conviction criminalizes conduct that falls exclusively" within the Guidelines' definition of "crime of violence." See Savage, 542 F.3d at 964. If so, the inquiry ends. But if the statute of conviction also criminalizes conduct that does not fall within the Guidelines' definition of a "crime of violence," the government must demonstrate that the conviction "necessarily" rested on facts identifying the conviction as one for a "crime of violence." Walker, 595 F.3d at 444 (internal quotation marks omitted). When a court is required to look beyond the statutory definition of a prior offense to determine whether it constitutes a "crime of violence," its inquiry is circumscribed. Generally, a sentencing court must limit itself "to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard v. United States, 544 U.S. 13, 16 (2005); see Johnson, 130 S.Ct. at 1273. This general limitation on the sentencing court's inquiry is driven by U.S.S.G. § 4B1.1(a)'s focus on the defendant's prior conviction, rather than the conduct underlying the conviction, as well as a need to avoid collateral trials. See Taylor v. United States, 495 U.S. 575, 600–01 (1990) (analyzing nearly identical language in the ACCA); see also Shepard, 544 U.S. at 23 (same). "[T]he critical issue is whether the judicial record of the defendant's prior conviction establishes that his guilty plea 'necessarily admitted [facts demonstrating that his conviction was for a crime of violence].'" United States v. Baker, 665 F.3d 51, 56 (2d Cir. 2012) (quoting Shepard, 544 U.S. at 26) (brackets in original).

Id. at 458.

---

[3] See also id. at 458 n.1 ("Johnson dealt with sentence enhancements under the [ACCA]. The ACCA's definition of 'violent felony' is identical in all material respects to U.S.S.G § 4B1.2(a)'s definition of 'crime of violence.' Therefore, cases interpreting the ACCA's definition of 'violent felony' are highly persuasive in interpreting the Guidelines' definition of 'crime of violence.' (citing United States v. Walker, 595 F.3d 441, 443 n.1 (2d Cir. 2010); United States v. Palmer, 68 F.3d 52, 55 (2d Cir. 1995))).

In <u>Reyes</u>, the Second Circuit pointed out that the Government submitted no evidence to the district court demonstrating that the defendant's conviction under the Florida statute necessarily rested on anything but the slightest unwanted physical contact.  <u>Id.</u>  In concluding that the Government had therefore failed to establish that this conviction constituted a crime of violence within the meaning of section 4B1.1(a), the court also held that "reliance on the [pre-sentence report]'s uncontested description of pre-arrest conduct that resulted in [the] defendant's prior conviction to determine whether that prior conviction constitutes one for a crime of violence is improper."  <u>Id.</u> at 460.  Nonetheless, in <u>United States v. Baker</u>, 665 F.3d 51 (2d Cir. 2012), the Second Circuit clarified that the modified categorical approach "'permits a court to . . . consult[] the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.'"  <u>Id.</u> at 56 (quoting <u>Johnson</u>, 559 U.S. at 144).

Here, the statute of conviction is divisible into separately listed offenses, <u>see</u> <u>Beardsley</u>, 691 F.3d at 263-64, but criminalizes some conduct that clearly does not fall within the Guidelines' definition of a "crime of violence."  <u>See</u> <u>Reyes</u>, 691 F.3d at 458.  Section 111(a) explicitly provides that a defendant may be found guilty of a misdemeanor by committing "simple assault," or a felony, where his acts involve "physical contact with the victim of that assault."  After <u>Johnson</u>—which the court finds persuasive in the context of section 4B1.2(a), <u>see</u> <u>Reyes</u>, 691 F.3d at 458 n.1—this does not rise to the level of physical force sufficient to constitute a "violent felony."  <u>See</u> <u>Johnson</u>, 559 U.S. at 140.  Accordingly, the Government must demonstrate that the conviction "necessarily" rested on facts identifying the conviction as a "crime of violence."  <u>Reyes</u>, 691 F.3d at 458.  Given the statutory definition of § 111(b), as well as the indictment and jury verdict in the instant prosecution, however, this is not a difficult task.

7

Specifically, the indictment charged not only that Jones "did knowingly and intentionally forcibly assault, resist, oppose, impede, intimidate and interfere with" the performance of a Deputy U.S. Marshal's duties, but also that Jones's conduct "involved physical contact with such person and inflicted bodily injury" in violation of both §§ 111(a)(1) and 111(b). (Indictment (Dkt. 7) at 1-2.) More significantly, the special verdict sheet indicates that the jury specifically found that Jones's actions "resulted in bodily injury." (Verdict Sheet (Dkt. 40) at 1.) Thus, although a § 111(a) conviction can be established on the basis of simple assault or simple battery, the grand jury necessarily charged Jones with, and the petit jury necessarily found Jones guilty of, the separate § 111(b) violation, which required proof of bodily injury. Since the Johnson Court determined "the use of physical force" means "violent force," which it defined as "force capable of causing physical pain or injury to another person," it is clear that Jones's conviction necessarily rested on the finding that he used "violent force," and therefore "physical force" within the meaning of section 4B1.2(a)(1).[4] See Johnson, 559 U.S. at 140. As a result, the court is satisfied that the offense of conviction constitutes a crime of violence within the meaning of section 4B1.1(a) of the Guidelines.[5] See United States v. Davis, 561 F. App'x 50, 52 (2d Cir. 2014) (summary order) (affirming district court that applied modified categorical

---

[4] Thus, Defendant's reliance on the fact that the application note to section 4B1.2 lists "aggravated assault," but not simple assault, as an example of a crime of violence (see Def. Ltr. at 4), is ultimately unavailing, since the jury did not convict Jones of merely simple assault. In any event, Defendant's argument ignores the sentence immediately following the one he cites, which explicitly provides that "[o]ther offenses are included as 'crimes of violence' if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2 cmt. n.1.

[5] See also United States v. Van Mead, 773 F.3d 429, 432 (2d Cir. 2014) (noting section 4B1.2(a) defines "crime of violence" in three alternate ways: the "physical force clause," section 4B1.2(a)(1), the "exemplar crimes," the first half of section 4B1.2(a)(2), and the "residual clause," the second half of section 4B1.2(a)(2)); United States v. Brown, 629 F.3d 290, 296 (2d Cir. 2011) (finding defendant's conviction in Connecticut state court for assault on a corrections officer constituted a "violent felony" under the ACCA's "residual" clause—which alternatively defines "violent felony" as conduct "that presents a serious potential risk of physical injury to another"—because the Connecticut statute specifically required that the victim suffer physical injury); United States v. Washington, 270 F. App'x 26, 28 (2d Cir. 2008) (summary order) (pre-Johnson decision finding that conviction based on information charging that defendant recklessly caused bodily injury to a family or household member "by squeezing her arms" involved "the use of physical force" constituting a crime of violence within the meaning of section 4B1.1(a)).

approach based on plea colloquy, in which defendant admitted he intentionally physically assaulted the victim, to conclude that was a crime of violence within the meaning of U.S.S.G. § 4B1.2(a)).

**B.      Is Jones's Youthful Offender Adjudication a "Prior Felony Conviction"?**

A "prior felony conviction," for the purpose of section 4B1.1(a), means a prior adult federal or state conviction punishable by death or imprisonment for a term exceeding one year. U.S.S.G. § 4B1.2 cmt. n.1. The Guidelines explain that a conviction for an offense committed prior to age eighteen is an adult conviction "if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." Id. After United States v. Cuello, 357 F.3d 162, 168-69 (2d Cir. 2004), and United States v. Driskell, 277 F.3d 150, 157 (2d Cir. 2002), it is well-settled that district courts in the Second Circuit are permitted to consider New York youthful offender adjudications in applying the federal Sentencing Guidelines. See, e.g., United States v. Lesane, 579 F. App'x 51, 52, 53 (2d Cir. 2014) (summary order). Both Jones and the Government agree that in the Second Circuit, to determine whether a youthful offender conviction qualifies as an adult conviction under New York State law, the court must "examine the substance of the prior conviction at issue, to 'focus on the nature of the proceedings, the sentences received, and the actual time served.'" Cuello, 357 F.3d at 168-69 (quoting Driskell, 277 F.3d at 157). The court may also consider where the defendant served his sentence. Id. at 169.

Although "[t]here is no set formula for determining the substantive consequence of the criminal proceeding underlying the youthful offender adjudication," United States v. Jackson, 504 F.3d 250, 253 (2d Cir. 2007) (internal quotation marks omitted) (noting this determination "is a function of many variables, no single one of which is dispositive"), the

9

Government has cited a number of analogous Second Circuit decisions finding that defendants' youthful offender convictions constituted adult convictions for sentencing purposes, including under chapter 4 of the Guidelines. See Lesane, 579 F. App'x at 52 (noting defendant was prosecuted in Bronx County Supreme Court, "which is an adult forum," was convicted of felonies, received sentences amounting to felony time, and "served those sentences in the New York State Department of Corrections adult facility"); Jackson, 504 F.3d at 253 (noting that although the record did not indicate whether the defendant served his sentence in an adult institution, he was tried and convicted in an adult court of adult drug offenses punishable by imprisonment for more than one year); United States v. Cruz, 136 F. App'x 386, 388-89 (2d Cir. 2005) (summary order) ("First, even though Defendant was sixteen at the time he committed the crime, he was charged with a serious adult crime, not a juvenile offense. Second, he was prosecuted and convicted in an adult court—the New York Supreme Court, Bronx County— rather than a family court. Third, although following his conviction as an adult he received a youthful offender adjudication, Defendant was sentenced to a term of probation of five years, the kind of sentence that adults receive every day." (internal quotation marks omitted)); United States v. Jones, 415 F.3d 256, 263 (2d Cir. 2005) (noting defendant pleaded guilty to felony offenses in an adult forum and received and served a sentence of over one year in an adult prison for each offense); Cuello, 357 F.3d at 169 (noting defendant was tried and convicted in an adult forum and served his sentence in an adult prison); Driskell, 277 F.3d at 158 (noting defendant was tried and convicted in adult court and received and served "what can be thought of as an 'adult' sentence").

The application of these decisions to this Jones's June 16, 1999, youthful offender adjudication is straightforward. Jones was convicted in adult court (New York Supreme Court,

10

Kings County); Jones was convicted of a serious, adult offense (robbery in the first degree); Jones received an adult sentence of three years imprisonment—and actually served almost four years on concurrent sentences; and Jones served his sentence in an adult prison (a New York State Department of Corrections adult facility). (See Apr. 22, 2015, Probation Ltr. (Dkt. 49) at 3.) Each of these factors counsels in favor of classifying this conviction as an adult conviction for the purpose of section 4B1.2. See, e.g., Lesane, 579 F. App'x at 52 ("We have previously held that a Youth Offender Adjudication must be treated as an adult conviction within the meaning of §§ 2K2.1(a)(2) and 4A1.2(d)(1) if the defendant 'although under age eighteen was tried in an adult court, convicted as an adult, and received and served a sentence exceeding one year and one month in an adult prison.'" (quoting Driskell, 277 F.3d at 154)).

Jones does not dispute the validity or applicability of any of these cases. Instead, he argues that because the New York court had the power to deny Jones youthful offender treatment and to impose a sentence to run consecutive to the other crimes for which he was sentenced the same day, but did not, these circumstances demonstrate that Jones "was not treated as an adult by the New York court and the youthful offender adjudication should not count as an adult conviction." (Def. Ltr. at 5; see also Apr. 22, 2015, Def. Reply Ltr. (Dkt. 48) at 2.) This argument both misconstrues the appropriate legal analysis and overlooks explicit instructions in the Guidelines.

First, the entire purpose of the Cuello/Driskell analysis is to determine whether a youthful offender adjudication should be deemed an adult conviction for purposes of sentencing in federal court. See, e.g., Jones, 415 F.3d at 263 ("[T]he Cuello court reasoned that classification as an adult conviction under the laws of New York does not mean we look to whether New York calls it a conviction, but rather, that we look to the substance of the proceedings."). That a New York

11

court decided that youthful offender treatment was appropriate is the fundamental premise of the issue, and the beginning of the analysis—not its conclusion. See, e.g., Lesane, 579 F. App'x at 53 ("Cuello and Driskell are part of a well-settled body of Second Circuit sentencing law that permits New York Youthful Offender Adjudications to be considered by courts applying the Sentencing Guidelines."). Moreover, as the Second Circuit has previously reasoned, "the nature and apparent purpose of New York law regarding youthful offender adjudications contradicts defendant's argument—that youthful offender adjudications are categorically not "adult convictions" under New York law—in almost every respect beyond the purely semantic." Cuello, 357 F.3d at 168; see also Cruz, 136 F. App'x at 389 ("Cuello and Driskell teach that district courts should eschew categorical approaches and instead weigh and consider all of the facts and circumstances in an effort to determine the 'substance' of the conviction at issue."). Thus, Defendant's argument that this court should find that his youthful offender adjudication was not an adult conviction because the New York court decided to treat it as a youthful offender adjudication is both circular and fundamentally meritless in light of well established Second Circuit precedent.[6] See United States v. Sampson, 385 F.3d 183, 195 (2d Cir. 2004) (noting the youthful offender statute is meant "to provide a second chance, not a 'technical legal advantage if, not having learned a lesson, [individuals] continue their criminal conduct.'" (quoting United States v. Acosta, 287 F.3d 1034, 1037 (11th Cir. 2002))).

---

[6] The Second Circuit's recent decision in United States v. Sellers does not change the court's conclusion in the Guidelines context. See No. 13-CR-4431, slip op. at 21 (2d Cir. Apr. 27, 2015) ("The ACCA's incorporation of 18 U.S.C. § 921(a)(20)'s exclusion for convictions 'set aside' under state law . . . warrants treating New York [Youthful Offender] adjudications differently in the ACCA-predicate conviction context than in our previous decisions interpreting certain provisions in the U.S. Sentencing Guidelines."); id. at 24-25 ("We specifically distinguished the ACCA definition of qualifying convictions under 18 U.S.C. § 921(a)(2), which excludes convictions that have been 'set aside,' because that definition applied only to the ACCA and not to the Career Offender Guideline. Thus, we held that U.S.S.G. §§ 4B1.1 and 4B1.2 (the definitional section for the Career Offender Guideline), which do not exclude 'set aside' convictions, allow district courts to consider [Youthful Offender] adjudications when calculating the number of prior felony convictions for purposes of the Career Offender Guideline enhancement." (internal citation omitted)).

Second, whether the New York court imposed a concurrent or consecutive sentence on the basis of Jones's youthful offender adjudication has no effect on this analysis. The Sentencing Guidelines explicitly provide that "'[p]rior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and <u>regardless of the actual sentence imposed</u>." U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added). And case law in this circuit confirms the court's determination. <u>See, e.g.</u>, <u>United States v. Salvatore</u>, 568 F. App'x 76, 77-78 (2d Cir. 2014) (summary order) ("Although Salvatore did not serve time for his offense, that factor is not alone dispositive."); <u>United States v. Smith</u>, 376 F. App'x 140, 143 (2d Cir. 2010) (summary order) (emphasizing that the Guidelines "require only that a 'prior felony offense' be '<u>punishable</u> by . . . imprisonment for a term exceeding one year'" (emphasis in original) (quoting U.S.S.G. § 4B1.2 cmt. n.1)), <u>vacated on other grounds</u>, No. 08-CR-3859, 2011 WL 924349, at *1 (2d Cir. Mar. 18, 2011) (summary order); <u>United States v. Parnell</u>, 524 F.3d 66, 171 (2d Cir. 2008) (youthful offender adjudication qualified as an adult conviction in part "[b]ecause that conviction was <u>punishable</u> by up to seven years' imprisonment" (emphasis added)); <u>Cruz</u>, 136 F. App'x at 389 (considering defendant's time served under supervision of "adult-focused New York Probation Department," and noting that "while the defendants in <u>Cuello</u> and <u>Driskell</u> served prison sentences, nothing in those decisions suggests that a term of incarceration is required before a district court can classify a youthful offender adjudication as an adult conviction"); <u>see also</u> <u>Urena v. United States</u>, No. 99-CR-73 (JFK), 2010 WL 4823593, at *7 (S.D.N.Y. Nov. 29, 2010) (finding defendant's youthful offender adjudication could be properly considered a prior felony conviction, even where defendant was sentenced only to one year imprisonment, which he served concurrently with another adult sentence, in adult prison).

Thus, the New York court's decision to impose a concurrent sentence with respect to Jones's youthful offender adjudication does not change this court's classification of his June 16, 1999, conviction for first degree robbery as an adult conviction for sentencing purposes. As a result, the court finds that this conviction constitutes a "prior felony conviction" of a crime of violence within the meaning of section 4B1.1(a) of the Sentencing Guidelines. Consequently, the sentencing enhancement for career offenders under this provision of the Guidelines does apply to Jones.

## III. CONCLUSION

Accordingly, for the reasons set forth above, the court agrees with the Probation Department's determination that Jones qualifies for the sentencing enhancement for career offenders pursuant to section 4B1.1(a) of the U.S. Sentencing Guidelines. Therefore, the court finds that his offense level is 32, and his criminal history category is Category VI. See U.S.S.G. § 4B1.1(b); 18 U.S.C. § 111(b). Given the statutory maximum of twenty years for a conviction under § 111(b), the appropriate Guidelines range for Jones is 210 to 240 months' imprisonment.[7] See U.S.S.G. § 5A.

Dated: Brooklyn, New York
April 27, 2015

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[7] As explained during the sentencing hearing, the court ultimately granted Defendant a downward departure from the Guidelines range, imposing a sentence of 180 months in the custody of the Attorney General as "sufficient but not greater than necessary," to comply with the purposes of sentencing in federal cases. See 18 U.S.C. § 3553(a).